```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**NICHOLAS J. MATHIS,**

    **Petitioner,**

                                          CIVIL ACTION NO. 1:20CV103
                                        CRIMINAL ACTION NO. 1:19CR19-2
**v.**                                         (Judge Keeley)

**UNITED STATES OF AMERICA,**

    **Respondent.**

**MEMORANDUM OPINION AND ORDER**
**DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]**

Pending before the Court is the pro se motion filed by the petitioner, Nicholas J. Mathis ("Mathis"), seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 236).[1] For the reasons that follow, the Court **DENIES** the motion and **DISMISSES** Civil Action Number 1:20CV103 **WITH PREJUDICE.**

**I. BACKGROUND**

On May 14, 2019, Mathis, represented by counsel and without a plea agreement, pleaded guilty to an indictment charging Conspiracy to Possess with the Intent to Distribute and Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 ("Count One"), Aiding and Abetting Possession with the Intent to Distribute Methamphetamine within

---

[1] Unless otherwise noted, all docket numbers refer to Criminal Action No. 1:19CR19-2.

MEMORANDUM OPINION AND ORDER
DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]

1,000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 860(a) ("Count Two"), Aiding and Abetting Possession with the Intent to Distribute Heroin within 1,000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Three"), Aiding and Abetting Possession with the Intent to Distribute Fentanyl within 1,000 Feet of a Protected Location, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 860(a) ("Count Four"), and Aiding and Abetting Possession of Firearm in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Seven") (Dkt. No. 16).

Subsequently, on August 26, 2019, the Court sentenced Mathis to 195 months of imprisonment followed by 10 years of supervised release (Dkt. No. 202). Because Mathis did not appeal, his convictions became final on September 9, 2019. Within a year, on May 26, 2020, Mathis filed the instant 28 U.S.C. § 2255 petition (Dkt. No. 236).

After being notified that his pleading was deficient, Mathis appropriately refiled his petition on August 26, 2020 (Dkt. No. 273). He argues that his counsel was ineffective by failing to move to dismiss Count Seven during his plea hearing, and by failing to negotiate or secure a plea agreement for him (Dkt. No. 273). On May 12, 2021, the Court directed the Government to respond to

**MEMORANDUM OPINION AND ORDER**
**DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]**

Mathis's motion (Dkt. No. 304). Following the filing of the Government's response brief, Mathis did not reply. The matter therefore is fully briefed and ripe for decision.

## II. APPLICABLE LAW

28 U.S.C. § 2255(a) permits federal prisoners who are in custody to assert the right to be released if "the sentence was imposed in violation of the Constitution or laws of the United States," if "the court was without jurisdiction to impose such sentence," or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." A petitioner bears the burden of proving any of these grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

Where, as here, a petitioner alleges ineffective assistance of counsel, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle v. United States, 269 F. Supp. 3d 716, 726 (E.D. Va. 2017) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The [p]etitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'" Beyle, 269 F. Supp. 3d at 726 (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)).

MEMORANDUM OPINION AND ORDER
DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]

To satisfy the first prong, the petitioner must show that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687-88. But "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

To satisfy the second prong, the petitioner must demonstrate that counsel's inadequate performance prejudiced him. Id. at 687. Specifically, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In addition, "where a plea offer has lapsed or been rejected because of counsel's deficient performance," the petitioner must demonstrate, among other things, "that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Missouri v. Frye, 566

U.S. 134, 147 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### III. DISCUSSION

**A. Defense Counsel's Alleged Failure to Move to Dismiss Count Seven at the Plea Hearing**

Although the exact nature of Mathis's first claim is somewhat unclear, it appears that he contends his attorney was ineffective by failing to move to dismiss Count Seven — Aiding and Abetting Possession of Firearm in Furtherance of Drug Trafficking Crime — at his sentencing (Dkt. No. 273). However, as no discussion about dismissing Count Seven occurred at his sentencing (Dkt. No. 323), Mathis is likely referring to a discussion involving Count Seven that took place during his plea hearing, when the Government sought to strike surplus language from Counts One and Seven, but never discussed dismissing Count Seven outright (Dkt. No. 287 at 10:18-13:2).

Undoubtedly, courts may consider whether counsel's failure to make a motion constitutes ineffective assistance. See, e.g., Premo v. Moore, 562 U.S. 115, 123-24 (2011); Kimmelman v. Morrison, 477 U.S. 365, 384-87 (1986). But here Mathis is confused about the nature of the issue. On May 10, 2019, the Government filed a motion to dismiss Counts Five and Six, and to strike surplus language

**MEMORANDUM OPINION AND ORDER**
**DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]**

from Counts One and Seven of the Indictment (Dkt. No. 76). With respect to Counts One and Seven, each count included language referring to cocaine hydrochloride, crack cocaine, heroin, fentanyl, and methamphetamine (Dkt. No. 16). But when the Government sent the confiscated drugs away for testing, they tested positive only for methamphetamine and a heroin/fentanyl mixture. Id. As they were not detected, the Government moved to strike the language in Count Seven of the Indictment referencing cocaine hydrochloride and crack cocaine. Id.

The Court addressed the Government's motion to strike during the plea hearing and concluded that the surplus language should remain (Dkt. No. 287 at 10:18-13:2). At that point, the discussion on the subject ended. Id. at 13:2. At bottom, therefore, the Government clearly never moved to dismiss Count Seven outright as Mathis has asserted, but only to strike surplus language (Dkt. No. 76).

Even had a discussion concerning a dismissal of Count Seven occurred, Mathis admitted at his plea hearing that one of the confiscated firearms specified in that count was his:

> THE COURT: All right. Did you own any of these firearms?
>
> DEFENDANT: Yes, ma'am.
>
> THE COURT: Which ones did you own?

> DEFENDANT: (No response.)
>
> THE COURT: I'll ask: Did you own the Ruger?
>
> DEFENDANT: No, ma'am.
>
> THE COURT: Did you own the Lugar?
>
> DEFENDANT: No, ma'am.
>
> THE COURT: Did you own the Mossberg?
>
> DEFENDANT: Yes, ma'am.

(Dkt. No. 287 at 72:6-16). This admission under oath established a strong factual basis for Mathis's guilt to the crime charged in Count Seven.

Additionally, during the plea proceedings, the Court ensured that Mathis understood the particular issue under discussion:

> THE COURT: Okay.
>
> So as I read -- let me explain this to Mr. Mathis and Mr. Perdue. As I read these counts to you, Count 1 and Count 7 include mention of cocaine hydrochloride and crack cocaine, but when the Government sent the drugs away for testing, the drugs came back for other substances, heroin, and meth. Was that the other one? Methamphetamine?
>
> MR. FLOWER: And fentanyl.
>
> THE COURT: And fentanyl. So heroin and fentanyl, and not crack cocaine, or cocaine hydrochloride. Substantively, does that make a difference in your respective cases? No. But it is my position that I should not be going around amending the counts in the Indictment returned by the grand jury. It's a matter of proof for the Government.

Id. at 12:14-13:2.

Accordingly, the strength of the evidence in support of Count Seven as applied to Mathis belies that any decision by Mathis's attorney not to move to dismiss Count Seven was objectively unreasonable. Counsel reasonably could have concluded that Mathis's admission of ownership of the Mossberg firearm sufficiently supported the charge against him in Count Seven and that any motion to dismiss that count lacked merit. See United States v. Kilmer, 167 F.3d 889, 893 (5th Cir. 1999) (holding that "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim"); Moore v. United States, 934 F. Supp. 724, 731 (E.D. Va. 1996) (same). Mathis's first ineffective assistance of counsel claim therefore fails under Strickland's first prong.

Even assuming that the failure by Mathis's counsel to object was objectively unreasonable, which it was not, Mathis cannot establish "a reasonable probability . . . that the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Based on the weight of the evidence, a motion to dismiss Count Seven certainly would have been denied, and the ultimate outcome of the proceeding would not have changed. Therefore, Mathis's first

ineffective assistance of counsel claim would also fail under Strickland's second prong.

**B. Defense Counsel's Alleged Failure to Negotiate or Obtain a Plea Agreement**

Mathis next asserts that his counsel was ineffective because he failed to negotiate a favorable plea agreement (Dkt. No 273). The Government responds that, under Strickland's first prong, Mathis's counsel's strategy was objectively reasonable because, in point of fact, counsel had engaged in plea negotiations with the Government and had recommended that Mathis accept a plea offer (Dkt. No. 331). But because Mathis did not want to cooperate with the Government he instead pled to the Indictment rather than accept any plea agreement requiring him to cooperate with the Government in its efforts to convict his co-defendants. Id.

There is no constitutional right requiring that a defendant be offered a plea agreement. Weatherford v. Bursey, 429 U.S. 545, 561 (1977). "Counsel does not have a general duty to initiate plea negotiations," but "counsel is still required to be a 'reasonably effective advocate' regarding the decision to seek a plea bargain." United States v. Pender, 2013 WL 1137452, at *1–2 (4th Cir. Mar. 20, 2013). Should the plea-bargaining process take place, however, a defendant has a right to "effective assistance of competent counsel" under the Sixth Amendment. Lafler v. Cooper, 566 U.S.

MEMORANDUM OPINION AND ORDER
DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]

156, 162 (2012); Frye, 566 U.S. at 143; McMann v. Richardson, 397 U.S. 759, 771 (1970). Further, when the prosecution offers a plea agreement based "on terms and conditions that may be favorable to the accused[,]" defense counsel has a duty to inform his client about that offer. Frye, 566 U.S. at 145.

Here, the performance of Mathis's counsel did not fall below an objective standard of reasonableness. Mathis's assertion that his attorney did nothing to "broker" him a plea agreement is simply not true. In multiple letters written to Mathis, his counsel informed him of ongoing plea negotiations with the Government (Dkt. Nos. 338-2, 338-3, 338-4, 338-5, 338-6). Specifically, in a letter dated April 16, 2019, counsel detailed for Mathis three strategic options for defending his case: (1) he could accept the plea offer from the Government; (2) he could plead "straight up" to the Indictment; or (3) he could take the matter to trial (Dkt. No. 338-2). With respect to the plea offer, Mathis's counsel stated: "I began initial discussions with AUSA Cook and they seem agreeable to a plea agreement based upon drug weight only and dismissing the consecutive firearm count. This will require you to cooperate completely with the federal authorities." Id. Counsel then stated his "recommendation [] that you authorize me to continue plea negotiations and accept the plea offer which should be forthcoming by the Government." Id.

MEMORANDUM OPINION AND ORDER
DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]

Subsequently, Mathis's attorney sent him four more letters discussing strategic options and potential plea agreements, and updating Mathis on proceedings in his case to ensure he understood what was occurring (Dkt. Nos. 338-3, 338-4, 338-5, 338-6). Mathis, however, rejected all proffered agreements that required he cooperate with the Government (Dkt. Nos. 338-4, 338-5). Consequently, after all of the options had been clearly presented to him by counsel, Mathis decided to plead to the Indictment. This was a knowing, informed decision made contrary to the advice of his attorney, who had painstakingly mapped out all of Mathis's options in detail and recommended he negotiate a plea agreement.[2]

At his plea hearing, Mathis acknowledged that he had been informed of every option available to him:

> THE COURT: Was a plea agreement actually offered?
>
> MR. ZIMAROWSKI: Your Honor, there was never a plea agreement reduced to writing, but we had the parameters of an oral plea agreement, which was discussed, presented, rejected; discussed, presented, rejected, with Mr. Mathis, and was just discussed, presented, and rejected with Mr. Mathis –
>
> THE COURT: Again.
>
> MR. ZIMAROWSKI: -- about 20 minutes ago.

---

[2] The offered plea agreement would have dismissed Count Seven, the Count that Mathis is currently saying his attorney should have moved to dismiss (Dkt. No. 338-2).

11

> THE COURT: All right. So you're telling me that he's been aware of ongoing attempts to negotiate a result in this case, and he concluded, at the end, to plead up to the entire indictment?
>
> MR. ZIMAROWSKI: He has been aware, Your Honor. Again, I went through and made a rather extensive presentation with him of his options of a plea; his options of taking and pleading straight up to the Indictment; options of going to trial and not testifying; options of going to trial and testifying, and what would happen under each of the -- all of the four scenarios.
>
> THE COURT: Is that -- do you have that in writing to him?
>
> MR. ZIMAROWSKI: I -- we did that orally and in writing in letters, Your Honor.
>
> THE COURT: Okay. You agree with that, Mr. Mathis, all of that?
>
> DEFENDANT: Yes.
>
> THE COURT: All right. So you feel that you've been fully informed of every option you had in the case?
>
> DEFENDANT: Yes.

(Dkt. No. 287 at 81:8-82:11).

In light of the fact that his attorney had engaged in plea negotiations with the Government, and that it was Mathis who had declined the proffered plea agreement, any argument that his attorney "did nothing to 'broker' a plea deal" is wholly without merit. The evidence establishes beyond peradventure that Mathis's

attorney attempted to secure a beneficial plea agreement for him. Mathis's second ineffective assistance of counsel claim thus fails under Strickland's first prong.

And even assuming his attorney had not attempted to negotiate a beneficial plea agreement, Mathis cannot establish a reasonable probability "that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Frye, 566 U.S. at 147. Every plea proposal proffered by the Government required that Mathis cooperate, which he adamantly refused to do.[3] Mathis's second ineffective assistance of counsel claim therefore also fails under Strickland's second prong.

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Mathis's § 2255 motion (Dkt. No. 236) and **DISMISSES** Civil Action Number 1:20CV103 **WITH PREJUDICE.** Because the record conclusively established that Mathis is not entitled to relief, there is no need for the Court to conduct an evidentiary hearing. 28 U.S.C. § 2255(b); see Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970).

It is so **ORDERED.**

---

[3] Mathis still refused to accept a plea agreement after the Government agreed to lessen the amount of cooperation and information that Mathis would be required to provide (Dkt. No. 338-4).

The Court **DIRECTS** the Clerk to enter a separate judgment order in favor of the United States, to transmit a copy of this order to Mathis by certified mail, return receipt requested, and to counsel of record by electronic means, and to strike this case from the Court's active docket.

## V. NO CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 and § 2255 Cases, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such cases. If the court denies the certificate, "the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Mathis has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find any assessment of the constitutional claims by the district court debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record, the Court concludes that

**MEMORANDUM OPINION AND ORDER**
**DENYING PETITIONER'S § 2255 MOTION [DKT. NO. 236]**

Mathis has failed to make the requisite showing and **DENIES** a certificate of appealability.

DATED: July 11, 2022

                                                /s/ Irene M. Keeley
                                                IRENE M. KEELEY
                                                UNITED STATES DISTRICT JUDGE